UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYQUAN ROBINSON,

                              Petitioner,

          -v-

UNITED STATES OF AMERICA,

                              Respondent.

No. 21-cv-786 (RJS)
OPINION & ORDER

UNITED STATES OF AMERICA

          -v-

TYQUAN ROBINSON,

                              Defendant.

No. 18-cr-373 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Petitioner Tyquan Robinson, who is currently incarcerated, brings this *pro se* petition under 28 U.S.C. § 2255 to vacate his conviction and sentence following his guilty plea to discharging a firearm during and in relation to a narcotics offense in violation of 18 U.S.C. § 924(c).  (Doc. No. 780 ("Pet.").)[1]  Robinson primarily argues that his lawyers were ineffective for failing to (i) challenge the Court's decision to impose an above-Guidelines sentence, (ii) order a psychological evaluation of him, and (iii) file a notice of appeal on his behalf.  In addition, Robinson claims that he is actually innocent of the crime to which he pleaded guilty.  For the reasons set forth below, Robinson's petition is DENIED.

---

[1] Unless otherwise indicated, all record citations are to Robinson's criminal case, Case No. 18-cr-373, and references to page numbers correspond to the page numbers provided in the ECF legend atop the filing, not to the filing's own pagination.

## I.   Background

Between 2011 and 2018, a criminal organization known as the "Boss Crew" sold large quantities of crack cocaine and heroin in the Bedford Stuyvesant neighborhood of Brooklyn, New York.  (Presentence Investigation Report ("PSR") ¶¶ 11, 13.)  Robinson joined the Boss Crew in 2015.  (*Id.* ¶ 25.)  Over the next three years, Robinson worked for the organization as a street-level distributor (*id.*; Doc. No. 392 at 2) and was ultimately responsible for the sale of more than 2,500 grams of crack and 331 grams of heroin (Doc. No. 615 ("Sentencing Tr.") at 21; Doc. No. 561 at 2).  But Robinson's activity was not confined only to selling drugs; he also became directly involved in the violence that often accompanies narcotics trafficking.  One event in particular was especially egregious.

On July 30, 2015, Robinson got into an argument with a rival crack dealer about territory.  (PSR ¶ 26.)  As the argument escalated, the rival dealer threatened to beat up Robinson, prompting Robinson to go to another Boss Crew member's apartment to retrieve a .22 caliber firearm.  (*Id.*; Doc. No. 392 at 2.)  With the gun in hand, Robinson returned to the location of the argument and approached the rival dealer.  (PSR ¶ 26; Doc. No. 392 at 2.)  The dealer ran, causing Robinson to chase him on foot.  (Doc. No. 392 at 2.)  During this chase down a city street, Robinson, while weaving between parked cars, fired several shots.  (PSR ¶ 26.)  Fortunately, no one was hit.  (*Id.*)

Robinson's involvement in the drug trafficking conspiracy finally ended when, on June 6, 2018, he was arrested along with several other members of the Boss Crew.  (PSR ¶ 43.)  About a year later, a superseding indictment was filed, charging Robinson with two counts:  (1) conspiracy to distribute crack and heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; and (2) discharging a firearm in furtherance of that conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and § 2.  (Doc. No. 246.)

On April 17, 2019, Robinson pleaded guilty, pursuant to a plea agreement, to only the firearm count, which carried a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life.  (Doc. No. 312 ("Plea Tr.").)  Prior to accepting his plea, the Court placed Robinson under oath and engaged in an extensive colloquy with him and his counsel.  Based on the representations of Robinson, his counsel, and the government, as wells as the Court's own observations of Robinson's demeanor and statements on the record, the Court concluded that Robinson was fully competent to plead guilty.  (*Id.* at 5–10.)  The Court then explained Robinson's rights under the Constitution and laws of the United States, the elements of the crime charged, the maximum penalties he faced for that crime, the terms of the plea agreement that he had entered with the government, and the consequences of pleading guilty, which Robinson expressly acknowledged.  (*Id.* at 10–50.)  After that, the Court asked Robinson to explain in his own words why he was guilty of the charged conduct, to which Robinson replied that he was selling drugs when "a problem occur[ed]" with a rival dealer, and he fired a gun to run the rival off the Boss Crew's turf and to protect himself.  (*Id.* at 51–53.)  Satisfied with Robinson's description, and after hearing the government's proffer of proof (*id.* at 54–56), the Court accepted Robinson's plea (*id.* at 57).  Because Robinson pleaded guilty only to the firearm count, his U.S. Sentencing Guidelines were easily calculable.  The mandatory minimum sentence and the recommended Guideline sentence for violating § 924(c)(1)(A)(iii) are the same:  10 years' imprisonment.  *See* 18 U.S.C. § 924(c)(1)(A)(iii); U.S.S.G. § 2K2.4(b); *see also* PSR ¶¶ 93–94.[2]

The parties initially appeared for sentencing on August 9, 2019.  (Doc. No. 457.)  In the preceding weeks, Robinson's attorneys had made a submission advocating for a sentence at the mandatory minimum term of 10 years.  (Doc. No. 384.)  During that proceeding, however, the

---

[2] Robinson's sentencing was governed by the November 1, 2018 edition of the Guidelines Manual.  (PSR ¶ 6.)

Court indicated that it was inclined to sentence Robinson well above that figure.  The Court pointed specifically to the seriousness of Robinson's charged and uncharged conduct and the disparity between this proposed sentence and the sentences that several of Robinson's co-defendants had received.  (Doc. No. 457 at 16–35.)  In light of this revelation, the Court adjourned the sentencing and permitted Robinson to make an additional submission to address the concerns that the Court had raised.  (*Id.* at 36–37.)

Robinson's supplemental sentencing submission expanded upon the arguments made in his initial letter.  (Doc. No. 555.)  In particular, Robinson focused on his traumatic childhood and how those experiences have continued to affect him throughout his life, as well as his lack of a leadership role in the Boss Crew.  (*Id.* at 3–5, 9–10, 13–14.)  In addition, Robinson argued that the Court lacked the authority to sentence him to a term of imprisonment greater than 10 years because, according to the Guidelines Manual, "a sentence above the mandatory minimum term required by 18 U.S.C. §924(c) . . . is an upward departure from the guideline sentence," (*id.* at 10 (emphasis omitted) (quoting U.S.S.G. § 2K2.4, n.2(B))), and Robinson stated that nothing in the record supplied a basis for such a departure.  The government responded to this latter legal argument by pointing out that Robinson's position was based entirely on cases that predated the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which rendered the Guidelines advisory rather than mandatory.  (Doc. No. 561 at 3.)  The government went on to explain that Robinson's argument is incompatible with *Booker* because it would effectively mean that the Court has no discretion in selecting the sentence for a § 924(c) charge.  (*Id.* at 3 (collecting cases).)

Robinson's sentencing was resumed on January 10, 2020.  (Doc. No. 615.)  The Court determined that an upward variance was necessary to account for the seriousness of the shooting and the massive quantity of drugs that Robinson was responsible for during his time in the

4

conspiracy. (*Id.* at 30–32, 35.) But while the Court indicated that it had considered imposing a sentence "well above the guidelines" (*id.* at 32), it ultimately determined that a sentence of 126 months' imprisonment – just six months above the mandatory minimum sentence – was appropriate in light of both the mitigating circumstances identified in Robinson's submissions, such as his lack of a leadership role in the Boss Crew, and the need to promote the predictability and stability associated with the plea-bargaining process (*id.* at 32–34, 37). Robinson did not appeal that sentence.[3]

One year later, Robinson submitted a *pro se* petition under 28 U.S.C. § 2255 to vacate his conviction and sentence. (Doc. No. 780.) Robinson identifies four related (and, in some cases, overlapping) grounds for relief. First, he argues that he "was sentence[d] well over his guideline range[,]" which he asserts was plain error. (*Id.* at 4.) Second, he asserts that his counsel was ineffective for (i) not objecting to an above-Guidelines sentence, (ii) failing to argue that mandatory minimums are "harsh and unfair," and (iii) failing to request a psychological evaluation of Robinson. (*Id.* at 5.) Third, Robinson argues that the Court failed to account for his minor role in the conspiracy. (*Id.* at 7.) And fourth, Robinson proclaims himself to be actually innocent. (*Id.* at 8.) As for why he did not raise these issues on appeal, Robinson states that, in each case, he relied on his attorneys' advice. (*See, e.g.*, *id.* at 9.)

## II.    Timeliness of Robinson's Petition

Section 2255 "imposes a one-year statute of limitations on motions to set aside sentences imposed . . . 'in violation of the Constitution or laws of the United States.'" *United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (quoting 28 U.S.C. § 2255(a), (f)). "This one year runs

---

[3] Although Robinson's plea agreement contained a waiver of his right to appeal or collaterally challenge his sentence under 28 U.S.C. § 2255, that waiver is inapplicable because the Court sentenced Robinson above the stipulated Guidelines range of 120 months. (Plea Agreement at 4.)

from the last of a number of triggering events," *id.* (internal quotation marks omitted), including "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1).  For purposes of this limitation period, "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005).  That occurs 14 days after the entry of judgment.  *See* Fed. R. App. P. 4(b)(1).

In this case, Robinson was sentenced on January 10, 2020, and the judgment of conviction was formally entered on the docket on January 14, 2020.  (Doc. No. 595.)  Because Robinson did not appeal, that judgment became final on January 28, 2020.  Robinson's petition is dated January 21, 2021 and was docketed on January 26, 2021.  (Doc. No. 780.)  As a result, Robinson's petition is timely.

### III.    Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Yick Man Mui v. United States*,

614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  The "procedural default rule" constitutes one such rule; it provides that a defendant may not substitute a collateral challenge for a direct appeal unless he can first demonstrate either "cause for failing to raise the claim at the appropriate time and prejudice from the alleged error" or that he is "actual[ly] innocen[t]."  *Id.* at 51, 54 (internal quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998).  "Constitutionally ineffective assistance of counsel is sufficient cause for excusing a procedural default."  *See United States v. Goffer*, No. 10-cr-56 (RJS), 2017 WL 203229, at *10 (S.D.N.Y. Jan. 17, 2017) (citing *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)).  Likewise, a claim that a petitioner's counsel was ineffective is itself exempted from this rule.  *See Yick Man Mui*, 614 F.3d at 54.

The Sixth Amendment guarantees a criminal defendant's right to the assistance of counsel. *See* U.S. Const. amend. VI.  When challenging the effectiveness of counsel's assistance, a petitioner must demonstrate both of the prongs set forth in *Strickland v. Washington*:  (1) that counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms"; and (2) that this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. 668, 687–88, 694 (1984).  A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

When evaluating counsel's conduct, a court must do so "on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal citation omitted) (quoting *Strickland*, 466 U.S. at 690).  "Actions and/or omissions taken by counsel for

strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009); *see also Strickland*, 466 U.S. at 690–91.

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Gonzalez*, 722 F.3d at 130; *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (explaining that a petition must put forward "a plausible claim" to warrant a hearing (internal quotation marks omitted)). Thus, a hearing is unnecessary where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez*, 722 F.3d at 130 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). Because a § 2255 petition "is ordinarily presented to the judge who presided at the original conviction and sentencing[,] . . . the judge's recollection of the events at issue" may inform the resolution of these issues. *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977).

Finally, where, as here, the petitioner is proceeding *pro se*, the Court construes the petition liberally and interprets it to raise the strongest arguments that it suggests. *See United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020); *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). But that "does not mean that [a] [*pro se*] defendant's case is always entitled to proceed: '[w]here . . . a petition fails even vaguely to suggest an essential element of a claim for relief, the district court is not required to overlook the deficiency.'" *Diaz v. United States*, 633 F. App'x 551, 555 (quoting *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998)).[4]

---

[4] Robinson has requested that the Court exercise its discretion and appoint counsel to assist him with his petition. (Pet. at 12.) In order to warrant the appointment of counsel under § 2255(g), however, Robinson must satisfy the factors laid out in *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986). *Hodge* dictates that "[i]n deciding whether to appoint counsel, . . . the district judge should first determine whether the [petition's arguments] seem[] likely to be of substance." *Id.* at 61. As discussed more below, the Court concludes that Robinson has identified no plausible ground on which to grant him relief. Accordingly, the interests of justice do not favor the appointment of counsel.

## IV.   Discussion

Robinson's petition raises a slew of arguments, which can be organized into two main categories.   First, Robinson claims that his counsel was ineffective for not requesting a psychological evaluation of him and for failing to challenge or appeal the Court's sentence.  (Pet. at 5.)  To be sure, Robinson raises a handful of challenges to the Court's sentence that he does not place under the rubric of ineffective assistance of counsel – for instance, Robinson suggests that it was plain error for the Court to sentence him over his applicable Guidelines range.  (*Id.* at 4; *see also id.* at 7.)  But since those arguments are effectively identical to his ineffective assistance claim, and because Robinson asserts that he did not seek a direct appeal on these issues because of the advice he received from his counsel, these arguments can be addressed in tandem with Robinson's ineffective assistance claim.  Second, Robinson argues that he is actually innocent of the charges to which he pleaded guilty.  (*Id.* at 8.)  The Court addresses each set of arguments in turn.

### A.   Ineffective Assistance of Counsel

#### 1.   Psychological Evaluation

Robinson's first argument is that his lawyers were constitutionally ineffective for failing to request that a psychological evaluation be performed on him.  (Pet. at 5.)  While Robinson's *pro se* petition does not explain what benefit he would have derived from such an evaluation, the two most likely possibilities are that Robinson believes that a psychological report would have either (i) shown him to be incompetent to plead guilty, or (ii) provided useful mitigating evidence for his sentencing.  Neither argument has merit.

The standard for determining whether a defendant is competent to plead guilty is well settled:  "[t]he defendant must have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of

the proceedings against him." *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (internal quotation marks omitted); *see also United States v. Brennan*, 928 F.3d 210, 215–16 (2d Cir. 2019) (same).  The record makes unmistakably clear that Robinson met this standard.

Prior to accepting his guilty plea, the Court carefully assessed Robinson's competency. (Plea Tr. at 5–10.)  During that assessment, Robinson explained to the Court that he had a history of some mental health issues, but after exploring those issues at length, the Court concluded that they did not call into question Robinson's competence.  *See United Sates v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) (recognizing that "some degree of mental illness cannot be equated with incompetence to stand trial"); *United States v. Geraldo*, No. 11-cr-1032 (PAE), 2021 WL 230282, at *6 & n.5 (S.D.N.Y. Jan. 21, 2021) (collecting cases for the proposition that courts "have often recognized that, even where a defendant had a documented mental-health condition, his competency to stand trial or plead guilty may still be beyond question").  Indeed, the only serious issue that Robinson reported was hearing voices in the past (Plea Tr. at 7–8), and the Court determined that this did not render Robinson incompetent because Robinson had received treatment and testified that he had not heard voices in "[a] couple of years" (*id.* at 8).  Robinson also stated that he understood what was taking place and neither his attorneys nor the government reported having any reservations about his competency.  (*Id.* at 9.)

Ultimately, the Court concluded that, based on the record, the testimony that it had heard, and the manner in which Robinson had conducted himself during this and other proceedings, there was no question that Robinson was competent to plead guilty.  (*Id.* at 9–10.)  That finding "bears substantial weight."  *United States v. Brickhouse*, No. 09-cr-1118 (KMK), 2017 WL 1049509, at *8 (S.D.N.Y. Mar. 16, 2017).  After all, "[t]he representations of the defendant, his lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea,

constitute a formidable barrier in any subsequent collateral proceedings[] since solemn declarations in open court carry a strong presumption of veracity." *See Geraldo*, 2021 WL 230282, at *6 (internal quotation marks and brackets omitted) (quoting *Blackledge*, 431 U.S. at 73–74).

It also bears noting that additional developments have further demonstrated Robinson's competency. To start, the presentence report prepared by the U.S. Probation Office reflected the same mental health issues that the Court discussed with Robinson prior to accepting his plea, and did not indicate that Robinson's competency was in question. PSR ¶¶ 75–77; *see also Geraldo*, 2021 WL 230282, at *6 (indicating that probation's findings further corroborated the court's determination that the defendant was competent). In addition, Robinson reported experiencing symptoms of depression because of his current legal situation. (PSR ¶ 76; Doc. No. 384 at 6.) That strongly indicates that Robinson grasped the gravity of the situation before him, further undermining any suggestion that he was not capable of understanding the nature of the proceedings.

In the face of this record, Robinson "offers no evidence that he was incompetent, let alone that it was obvious to his counsel . . . that [he] might be incompetent." *Brickhouse*, 2017 WL 1049509, at *8. Rather, he provides only the conclusory assertion that his counsel should have procured a psychological evaluation. But such "conclusory allegations" come nowhere close to raising a serious question about Robinson's competency. *Geraldo*, 2021 WL 230282, at *6. Thus, there is no basis to conclude that counsel acted unreasonably in failing to pursue a mental-health evaluation to determine whether Robinson was competent. *See id* at *7; *see also Chavez v. United States*, 764 F. Supp. 2d 638, 643 (S.D.N.Y. 2011) (holding that counsel was not ineffective for failing to pursue a psychiatric evaluation where "there is nothing in the record sufficient to overcome the substantial evidence of [defendant's] competency"). Nor can Robinson demonstrate

that he was prejudiced by such a failure given his own statements and actions in open court. *Geraldo*, 2021 WL 230282, at *7 (reasoning that because the defendant's actions in court demonstrated his clarity of mind, "a competency hearing – even if pursued and granted – would not have altered the course of his case" (internal quotation marks omitted)).

Likewise, nothing in the record suggests that Robinson's counsel was ineffective for failing to procure a psychological evaluation for mitigation purposes.[5]   To start, Robinson offers no indication about what such an evaluation might have shown; as a result, his petition does nothing more than "make vague, conclusory, [and] speculative claims as to what evidence could have been produced by" such an evaluation.  *Guerrero v. United States*, No. 15-cv-7282 (GHW), 2017 WL 1435743, at *9 (S.D.N.Y. Apr. 20, 2017) (quoting *United States v. Peterson*, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012)).  That is simply not enough to suggest that he suffered prejudice or that it was unreasonable for his lawyers to not have obtained such a report.

Moreover, even though his lawyer did not order a psychological evaluation, Robinson's mental health was discussed at length during sentencing and was expressly referenced by the Court when it explained the reasons for Robinson's sentence – in fact, the Court even recommended that Robinson receive outpatient mental-health treatment during his term of supervision following his release from prison.  (Sentencing Tr. at 32–33, 40–41.)  In their written submissions and during the sentencing hearing itself, Robinson's lawyers provided extensive detail concerning the

---

[5] Notably, such mitigation would have been relevant only to the 18 U.S.C. § 3553(a) factors; Robinson was ineligible for a departure due to diminished capacity under U.S.S.G. § 5K2.13.  For one thing, Robinson's conviction – for attempting to shoot a rival crack dealer in the middle of a city street – involved "actual violence."  U.S.S.G. § 5K2.13. For another, Robinson's plea agreement prevented him from advocating for a departure from the stipulated Guidelines range.  (Plea Agreement at 3.)  And "it was neither objectively unreasonable nor prejudicial for counsel to refrain from making a motion that was prohibited under the plea agreement that [Robinson] knowingly and voluntarily entered." *Scott v. United States*, No. 16-cv-1618 (RJS), 2019 WL 3773895, at *6 (S.D.N.Y. Aug. 12, 2019); *see also Kawesi v. United States*, No. 10-cv-5127 (LTS), 2011 WL 1560910, at *2 (S.D.N.Y. Apr. 19, 2011) (finding that counsel's actions taken for the "benefit of the plea agreement" were not objectively unreasonable (internal quotation marks omitted)).

psychological trauma that Robinson experienced during his childhood and how that has affected his psychological wellbeing.  (Sentencing Tr. at 8–9; Doc. No. 384 at 4–6; Doc. No. 555 at 3–5.) In addition, Robinson's lawyers hired a mitigation expert to prepare a report on Robinson, which they submitted to the Court in advance of sentencing.  (Doc. No. 555 at 23–38.)  While that report was not a formal psychological evaluation, it did delve into the details of Robinson's difficult upbringing and the psychological scars those experiences left on him.  (*Id.* at 24–30, 33, 35–37.) All told, then, there is no indication that Robinson would have benefited from yet another mitigation report.

### 2.     Challenges to the Sentence

Robinson raises a host of challenges related to his sentence – none have merit.  First, Robinson suggests that the Court incorrectly calculated his applicable Guidelines because it failed to consider his minor role in the conspiracy under U.S.S.G. § 3B1.2.[6]  (Pet. at 7.)  To support this assertion, Robinson points to his position in the criminal organization itself, the fact that he was "a target for execution several times because he was not a respected member," and that he was acting out of "peer pressure."  (*Id.*)  But there are a few problems with Robinson's argument.

To start, Robinson pleaded guilty to a violation of § 924(c).  The Guidelines Manual is clear that adjustments under Chapter 3 of the Guidelines, including those related to the defendant's role, are inapplicable to this count of conviction.  *See* U.S.S.G. § 2K2.4(b).  Robinson's counsel was therefore not objectively unreasonable for failing to seek a decrease in the applicable Guidelines range based on Robinson's role in the conspiracy.

---

[6] Robinson's *pro se* petition actually cites to U.S.S.G. § 3B1.1, which concerns aggravating roles.  (Pet. at 7.)  But the thrust of his argument clearly implicates § 3B1.2.

In any event, contrary to Robinson's assertions, his counsel argued repeatedly about Robinson's role in the conspiracy in the context of the § 3553(a) factors, and the Court considered that fact in imposing its sentence.  For instance, at sentencing, Robinson's counsel argued that Robinson "did not hold any position of authority" in the conspiracy, and the Court agreed. (Sentencing Tr. at 10.)  The government also spent a significant amount of time comparing Robinson to several of his co-defendants, and explaining why the government believed Robinson was less culpable than others, in part because of his role in the organization.  (*Id.* at 14–25.) Finally, in discussing the various factors that it considered to arrive at a sentence of 126 months' imprisonment, the Court expressly acknowledged that Robinson's role was "more peripheral" than many of his co-defendants and that several of his co-conspirators eventually turned on him, which "g[a]ve[] some [further] indication as to . . . where he fit in th[e] organization," and made him less culpable.  (*Id.* at 34.)  As a result, it is simply frivolous for Robinson to claim that his counsel (or the Court) failed to address his role in the conspiracy and how that should impact his sentence.

Second, Robinson faults his counsel for not arguing that the ten-year mandatory minimum sentence applicable to a § 924(c) conviction is "harsh and unfair."  (Pet. at 5.)  While one can certainly debate the wisdom behind mandatory minimum sentences, they are, as their name suggests, *mandatory*.  *See Dean v. United States*, 137 S. Ct. 1170, 1177–78 (2017).  Thus, no matter the equitable considerations at play, Robinson could not have escaped the mandatory minimum in this case.  His counsel was therefore not constitutionally ineffective for failing to raise a frivolous legal argument.  That is especially true here given that the Court ultimately sentenced Robinson *above* the statutory minimum.

Third, and finally, Robinson argues that his counsel failed to object to, and the Court erred in imposing, a sentence above the 120-month Guideline figure.  Once again, this argument is baseless.

To the extent that Robinson is suggesting that his counsel erred by not challenging the Court's authority to impose an above-Guidelines sentence in this case, his argument is contradicted by the record.  Prior to sentencing, Robinson's lawyers expressly argued that any sentence above the statutory mandatory minimum could be accomplished only through an upward departure rather than a variance.  (Doc. No. 555 at 10–19.)  Specifically, they pointed out that an Application Note to § 2K2.4 makes clear that any sentence above the mandatory minimum constitutes "an upward departure."  U.S.S.G. § 2K2.4, n.2(B).

The government persuasively rebutted that contention, however, by explaining that Robinson's position was based entirely on cases that predated the Supreme Court's decision in *Booker*, which rendered the Guidelines advisory rather than mandatory.  (Doc. No. 561 at 3.)  The government went on to explain that Robinson's argument is incompatible with *Booker* because it would effectively mean that the Court has no discretion in selecting the sentence for a § 924(c) charge.  (*Id.* at 3 (collecting cases).)  So, while the Court ultimately agreed with the government, that does not mean that Robinson's counsel was ineffective – the government simply had the better of the argument.  *See Scott v. United States*, No. 16-cv-1618 (RJS), 2019 WL 3773895, at *5 (S.D.N.Y. Aug. 12, 2019) (acknowledging that counsel was not ineffective for raising a losing argument).

As for whether his counsel was ineffective in having failed to procure Robinson a sentence lower than what he ultimately received, Robinson's arguments are again misplaced.  Robinson's lawyers argued repeatedly that a 120-month sentence was appropriate in light of his conduct and

that no additional time was necessary.  (Doc. No. 384 at 6–7; Doc. No. 555 at 8–10; Sentencing Tr. at 12–14.)  Again, the mere fact that Robinson's attorneys failed to convince the Court of their client's position does not indicate that their performance was ineffective.  *See Scott*, 2019 WL 3773895, at *5.  Nor can it be said that Robinson suffered any prejudice as a result of his lawyers' alleged failures, since the Court explained in detail why it concluded that an above-Guideline sentence was warranted.

In particular, the Court focused on the fact that a sentence at the mandatory minimum would not fully reflect the seriousness of Robinson's conduct.  Robinson fired a gun multiple times while on a city street in a densely populated area.  (Sentencing Tr. at 31.)  In addition, while he did not ultimately plead guilty to a narcotics-trafficking count, Robinson was deemed responsible for distributing at least 2,500 grams of crack and 331 grams of heroin (*id.* at 21; Doc. No. 561 at 2), which was not accounted for in the mandatory minimum sentence (Sentencing Tr. at 23, 35; Doc. No. 457 at 17, 21).  On top of all that, the Court noted that a Guidelines sentence would result in severe sentencing disparities with other members of the criminal conspiracy who were linked to far less narcotics weight than Robinson, but faced higher sentences because they pleaded guilty to a narcotics charge.  (Sentencing Tr. at 31–32; Doc. No. 457 at 20–26.)  As a result, the Court concluded that a sentence "well above the Guidelines" was likely appropriate.  (Sentencing Tr. at 32.)  And, in fact, the only reason that the Court imposed a sentence as low as it did – only six months above the mandatory minimum – was the mitigating factors that Robinson's lawyers marshaled on his behalf.  (*Id.* at 32–35.)

Together, then, the Court explained in detail why the mandatory minimum sentence failed to account for the seriousness of Robinson's conduct.  If anything, Robinson's lawyers were successful in persuading the Court to impose a sentence that was just a few months higher than the

mandatory minimum, well below what the Court had originally contemplated for Robinson. As a result, it is frivolous for Robinson to suggest that his lawyers acted unreasonably during his sentencing, much less that he was prejudiced by their actions or that the Court committed plain error.

### 3.    Failure to File a Notice of Appeal

The final argument that Robinson's *pro se* petition raises regarding his lawyers' performance – albeit, not expressly – is that they violated his constitutional rights by failing to file a notice of appeal on his behalf. (Pet. at 9, 11.) Again, the Court disagrees.

It is well settled that "a lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable and that where counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (internal citation omitted) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 483–84 (2000)); *see also Garza v. Idaho*, 139 S. Ct. 738, 747 (2019) (same). So, in cases where a defendant claims that his counsel failed to file an expressly requested notice of appeal, courts engage in "relatively simple fact-finding" to determine whether the defendant in fact instructed his counsel to file a notice of appeal. *Campusano*, 442 F.3d at 776. If he did, prejudice is presumed, and the defendant is entitled to another chance to appeal. *See id.* at 773.

That is not this case. Robinson "does not claim, nor is there any indication in the record, that he instructed his attorney to file a notice of appeal after the Court sentenced him." *Herrera v. United States*, No. 19-cv-10637 (NRB), 2020 WL 2835747, at *1 (S.D.N.Y. June 1, 2020). Absent such an assertion from Robinson, there is no basis on which to presume prejudice.

The next question, then, is "whether counsel consulted with [Robinson] about the possibility of appeal." *Campusano*, 442 F.3d at 773 n.3 (citing *Flores-Ortega*, 528 U.S. at 478).

In this context, courts "employ the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

It is here that Robinson's petition falls short – Robinson does not assert that his lawyers failed to consult with him regarding his right to appeal. In fact, Robinson admits that he did in fact consult with his lawyers. At numerous points in his petition, Robinson states that he chose not to appeal because he "relied on [his] attorney's advice." (Pet. at 4; *see also id.* at 6–9.) Robinson continues by explaining that his gripe is not that his lawyers failed to advise him about his right to appeal, but that his attorney did not affirmatively tell him that "he should challenge his conviction." (*Id.* at 11.) In other words, at most, Robinson's petition suggests that his lawyers discussed the possibility of filing an appeal but did not actively encourage him to do so. That is not ineffective assistance and, as a result, that is dispositive of Robinson's claim.

But even if Robinson's counsel had failed to consult with him about his right to appeal, he has still not alleged a plausible claim to relief. "If counsel failed to consult, [courts] ask whether 'there is a reasonable probability that, but for counsel's deficient failure to consult with [the petitioner] about an appeal, [the petitioner] would have timely appealed.'" *Campusano*, 442 F.3d at 773 n.3 (quoting *Flores-Ortega*, 528 U.S. at 484); *see also Sarroca v. United States*, 250 F.3d 785, 787 (2d Cir. 2001). To determine the answer to that question, courts consider two things: (1) whether "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," and (2) whether "this particular defendant reasonably

18

demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.  If the answer to either is "yes," then the petitioner has demonstrated prejudice.  *Id.*

Robinson's petition does not suggest that either of these factors is met.  For all the reasons discussed above, Robinson had no non-frivolous grounds for appealing his sentence.  Indeed, at most, he could have attempted to argue that the Court's sentence, which was six months above the recommended Guideline sentence, was substantively unreasonable.  But in light of both the Court's careful consideration of the facts in the record, the egregiousness of Robinson's conduct (including the large quantity of narcotics attributable to him that were not reflected in the mandatory minimum sentence), and the significant deference afforded to district courts' sentencing decisions, *see United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (explaining that a sentence is substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions" (internal quotation marks omitted)), Robinson had no realistic – that is, non-frivolous – expectation of succeeding on appeal.  And absent such a non-frivolous ground, a rational defendant in Robinson's shoes would have little desire to pursue an appeal.  *See United States v. Tamez*, No. 03-cr-1439 (DC), 2006 WL 2854336, at *10 (S.D.N.Y. Oct. 5, 2006) (Chin, *J.*); *see also Flores-Ortega*, 528 U.S. at 480, 485–86.

As for a demonstrated interest in appealing, nothing in the record or Robinson's petition hints at that fact.  This is particularly notable because the Court explicitly advised Robinson at the end of the sentencing that he very likely had the right to appeal if he so wished and informed Robinson that he should speak to his lawyers about an appeal if that was something that he was interested in pursuing.  (Sentencing Tr. at 44.)  Thus, if Robinson had wanted to explore the

possibility of appealing, the record or his petition would surely have reflected that fact.  *See Tamez*, 2006 WL 2854336, at *10.[7]

Because Robinson does not allege that his lawyers failed to follow his wishes or consult with him about his right to an appeal, and because he offers no non-frivolous grounds for an appeal and, in fact, never demonstrated an interest in pursuing such an appeal, the Court finds that Robinson's counsel did not provide ineffective assistance by not filing a notice of appeal.

## B.   Actual Innocence

Robinson's final argument is that he is actually innocent of the firearm charge to which he pleaded guilty.  (Pet. at 8.)  The Supreme Court has explained that "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Id.* (internal quotation marks omitted).

Robinson has no plausible claim to actual innocence in this case.  During his plea allocution, Robinson stated that, "[o]n July 30, 2015, [he] fired a gun in relation to selling drugs with others."  (Plea Tr. at 51.)  Robinson went on to explain that he fired the gun because there was "a problem" with a rival dealer selling drugs on the Boss Crew's turf, and he was attempting to drive that rival out.  (*Id.* at 51–52, 55–56.)  Following that admission, the government indicated

---

[7] While the fact that Robinson pleaded guilty would normally also counsel against concluding that he had a legitimate interest in appealing, *Flores-Ortega*, 528 U.S. at 480 (explaining that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings"), that is blunted somewhat by Robinson having received a sentence slightly above the Guideline figure to which the parties stipulated, *id.* (cautioning courts to consider whether "the defendant received the sentence bargained for as part of the plea").  So, because Robinson arguably did not receive precisely what he thought he had bargained for (though his sentence was only 5% above that figure), the fact that he pleaded guilty does not tip the scales much.  At the same time, the mere fact that Robinson received an above-Guidelines sentence does not suggest that he had a rational interest in appealing.  As just discussed, Robinson had no non-frivolous grounds for challenging his sentence.  And to hold otherwise would effectively require the Court to conclude that a defendant is *per se* expected to appeal an above-Guidelines sentence so long as he is not precluded from doing so by an appeal waiver.  That cannot be.

that Robinson's testimony was supported by recordings of wiretapped calls, witness testimony concerning the shooting, ballistics evidence, social media posts, and evidence from Robinson's cellphone, all of which would confirm that Robinson was involved in a narcotic-trafficking organization and fired a gun in furtherance of that organization's dealings.  (*Id.* at 54–55.) Robinson did not object to that proffer.  (*Id.* at 55.)  Finally, the PSR, to which Robinson also did not object, reflects that Robinson fired multiple shots at a rival dealer in July 2015, and that Robinson helped to distribute narcotics for the Boss Crew for almost three years.  (PSR ¶¶ 24–26.) As a result, Robinson has no basis on which to proclaim actual innocence.

*     *     *

In light of the above, the Court concludes that Robinson neither received ineffective assistance of counsel nor is actually innocent of the crime of which he was convicted.  In addition, Robinson's assertions regarding procedural and substantive errors in the Court's sentencing decision are procedurally defaulted because he failed to appeal his sentence and has neither demonstrated cause for that failure nor resulting prejudice.

## V.    Conclusion

For the reasons set forth above, Robinson's § 2255 petition is DENIED.  In addition, because Robinson has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and, therefore, Robinson may not proceed *in forma pauperis*.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Finally, the Clerk of Court is respectfully directed to (i) terminate

the open motions pending at document number 780 in Case No. 18-cr-373 and document number 1 in Case No. 21-cv-786; (ii) close Case No. 21-cv-786; and (iii) mail a copy of this order to Robinson.

SO ORDERED.

Dated:          February 15, 2021
               New York, New York

_____
Richard J. Sullivan
United States Circuit Judge
Sitting by Designation